SAMUEL HECHTMAN, Appellant, v. CHICAGO GREAT WESTERN RAILWAY COMPANY, Appellee.

**RAILROADS:** Negligence—Employee Alighting From Moving Train.
1   Testimony that a passenger train was made up, inspected, and started on its journey in the ordinary way, reveals no negligence as to an employee whose duty was to refill the ice coolers prior to the starting of the train and without notice of such starting, but who, on the occasion in question, was upon the train when it started, and was injured in attempting to alight.

**NEGLIGENCE:** Proximate Cause—Speculative Nature of Testimony.
2   The negligence alleged as the basis for an action must be proven substantially as alleged—not left to a mere inference or guess.

*Appeal from Fayette District Court.*—W. J. SPRINGER, Judge.

SEPTEMBER 28, 1921.

ACTION at law to recover damages for personal injury. There was a directed verdict for defendant, and plaintiff appeals.— *Affirmed.*

*James Cooney* and *E. H. Estey,* for appellant.

*E. R. O'Brien* and *Carr, Carr & Evans,* for appellee.

WEAVER, J.—Plaintiff was an employee of the defendant railway company at Oelwein. In such employment, he was required, among other things, to supply ice to the water coolers on passenger coaches calling at the Oelwein station. On the day in question, it became his duty to ice the cooler in a car which had arrived from Chicago, Illinois, bound for Omaha, Nebraska. When he was emptying the ice into the cooler, the train started, and, while it was in motion, plaintiff went to the car platform, and undertook to pass down the steps, and in so doing, he fell or was thrown to the ground, receiving personal injury. In this action, he seeks to recover damages on account of such injury, on the theory that defendant, by its employees, was negligent in failing to give him any warning of the starting of the train, or to allow him sufficient time to perform the work assigned to him, before putting the car in motion.

1. RAILROADS: negligence: employee alighting from moving train.

He also charges that defendant had negligently permitted the existence of a protruding ''nail or screw or other obstruction'' upon one of the steps over which he was leaving the car, and that, while he was making his exit, his trousers caught upon such obstruction, causing him to fall, and thus sustain the injury of which he complains.

Issue was taken upon these allegations, and tried to a jury. At the close of plaintiff's testimony, the court sustained defendant's motion for a directed verdict in its favor, because of the insufficiency of. the evidence to sustain a recovery of damages. A reading of the record leads us to the conclusion that there was no error in the ruling complained of.

The only witness testifying of the accident and the attend-

ing circumstances is the plaintiff himself, and, for the purposes of this appeal, we may concede the entire truthfulness of his story. He says, in substance, that, after the arrival of the Chicago train, more or less switching was done, some of the cars being attached to trains there being made up for the several branches of the railway radiating from Oelwein. At some time during the wait at this station, plaintiff, in pursuit of his employment, took a pail of ice into the Omaha car, and emptied it into the cooler. While so engaged, he noticed that the car was in motion, but says he did not know it was pulling out, but felt sure it was not, believing that it was a mere switching movement. He says:

"I went out on the platform, and started to get off. * * * When I got on the platform, the train had gone about a couple hundred yards. Was going about 10 to 12 miles an hour. I had on my left arm the empty pail. Took hold of the grab iron with my left hand. Went down the steps. There were three steps. Tried to get off, but something caught on my left foot by the pants. Something caught me, and I didn't notice. When I got down on the lower step, and before I tried to get off, I was standing with both feet on the lower step. Then I swung, hanging down, holding the grab handle. I took my right foot off that lower step, and my left foot still on the lower step. * * * Then I tried to reach the ground with my right foot and take off the other, and I would be down. When I started to put my right foot down, and take my left foot off the step, it throwed me down. The lower step was made of wood, covered by a piece of rubber matting fastened with screws or nails. Don't know what threw me down. Something caught on my pants, and I could not get my foot off the platform to get down, and that is what held me."

On cross-examination, he says:

"When I went back with the ice, the train was made up, but I didn't notice. I figured on another coupling, and didn't notice it was made up. It was made up, but I expected them to make another move—another coupling. * * * While I was doing that [filling the cooler], I felt the train start. I kept on filling the cooler, and the train was moving at that time. After I got that done, went back to where the porter was, to see if he didn't want some ice. The train was moving all that

time. Don't remember whether he wanted any ice. After the train started, it was only about two minutes till I decided to get off. * * * I did not know whether the inspector was through with his work, or whether the conductor had signaled 'all right,' for the train to start. After I got on the train, and found it was in motion, I was still waiting for another stop.''

Plaintiff explains that he was misled into believing the train had not started from the station, because the order in which the several cars were attached or coupled together was not such as was usually observed by the defendant in making up that train, and because it is ''usual'' for the car inspector, when a train is ready to start, to pull a cord, that ''gives lots of noise over all the train.'' That signal, he says, means that the inspector notifies the engineer that the air-hose is all connected and in good order. This signal is answered by the engineer, with the air, making a blowing noise; the conductor ''gives some kind of a sign with his hand; and the train starts.'' He says that the air test and signal to the engineer are given after the train has been fully made up, and adds:

''When I went back with that pail of ice, I didn't know— I didn't know whether the air had been tested, or whether the inspector had signaled all right for the train to start.''

Without further quotation from the record, it appears to us very clear that plaintiff's allegations of negligence on the part of defendant are without any substantial support. There is no showing whatever of any rule or custom of the defendant at this station, entitling plaintiff to warning before allowing its train to start. It was a regular train, accustomed to stop at Oelwein but a few minutes after its arrival from Chicago. The nature of the service being performed by plaintiff was not such as exposed him to peculiar danger, against which it can fairly be found that he was entitled to other notice or warning than such as was afforded him in the conduct of defendant's employees in coupling up the cars, and in the familiar preparation of the train for its journey. Even if we were to assume that plaintiff could rightfully place some degree of reliance upon the inspector's signal to the engineer, or upon the engineer's response thereto, or upon the conductor's call, there is no evidence that all these were not given in the usual manner. In-

deed, plaintiff's story fairly indicates that these preliminaries were, or might have been, attended to before he entered the car. He admits that he did not enter the car with his ice until after the train had been fully made up, and he did not know and could not say but that the signals between inspector and engineer had already been given; and his only explanation of his heedlessness is, not that he was depending upon a signal, but that he in some way took it for granted that there would be another stop, and another coupling made. Under such circumstances, it must be said that there is no evidence of any neglect of duty by defendant in failing to give warning of the moving of the train.

On the charge of negligence with respect to the condition of the step or steps from the car platform, the failure of evidence is equally apparent. Plaintiff was not a passenger, and the *res ipsa* doctrine, which might, under some circumstances, be invoked in favor of a passenger, has no application here. The allegation that there was a protruding "nail or screw or other obstruction" in the step finds no substantial support in plaintiff's testimony. Neither he nor any other witness appears to have examined the step, either before or after the accident. He admits that he does not know what the leg of his trousers caught upon, when he undertook to drop from the step to the ground, but says it was "something," the character of which he does not and cannot describe. This is entirely too vague and indefinite to justify the conclusion that the unknown and undefined cause of his misfortune was the failure of the defendant to exercise reasonable care for his safety.

*2. NEGLIGENCE: proximate cause: speculative nature of testimony.*

The court did not err in directing a verdict for the defendant.—*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.